SO ORDERED: March 23, 2022.



_____
James M. Carr
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| KEITH GERALD SHANKLIN and ) | Case No. 21-00120-JMC-7A |
| DEIRDRE ANN SHANKLIN, ) | |
| ) | |
| Debtors. ) | |
| ) | |
| NANCY J. GARGULA, ) | |
| UNITED STATES TRUSTEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary Proceeding No. 21-50060 |
| ) | |
| KEITH GERALD SHANKLIN and ) | |
| DEIRDRE ANN SHANKLIN, ) | |
| ) | |
| Defendants. ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This adversary proceeding came before the Court for a bench trial on November 15, 2021. Plaintiff Nancy J. Gargula, United States Trustee ("Plaintiff"), appeared by counsel Laura

A. DuVall. Defendants Keith Gerald Shanklin and Deirdre Ann Shanklin ("Defendants") appeared by counsel Harley K. Means. At the conclusion of the trial, the Court took under advisement (1) the admissibility of all or certain portions of the recording of the 11 U.S.C. § 341 meeting of creditors (the "341 Meeting Recording"), which ruling would be made after listening to the 341 Meeting Recording; and (2) this adversary proceeding.

Having listened to the 341 Meeting Recording, the Court admits the entirety of the 341 Meeting Recording into evidence.

The Court, having reviewed and considered the evidence admitted at the trial, the 341 Meeting Recording, the *Stipulated Facts* filed by the parties on November 10, 2021 (Docket No. 16) (the "Stipulation"), the other matters of record in this adversary proceeding, Proof of Claim No. 5-2 (the "Claim") filed by Department of Treasury – Internal Revenue Service ("IRS") on September 23, 2021 in the underlying bankruptcy case and the docket of the underlying bankruptcy case; having weighed the credibility of the witnesses; having heard the presentations of counsel at the trial; and being otherwise duly advised, now ENTERS the following findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052.

### Findings of Fact

Plaintiff and Defendants have jointly stipulated to the following facts:[1]

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2. Plaintiff is the United States Trustee for Region 10, which includes the Southern District of Indiana.

---

[1] Except where noted by brackets, these stipulated facts (findings 1 through 36) are included verbatim from the Stipulation.

3. [Defendants] filed their bankruptcy case under Chapter 7 of Title 11 of the United States Code on January 13, 2021 ("Petition Date"), in the Southern District of Indiana, case number 21-00120 JMC-7A ("Bankruptcy Case").

4. Mark S. Zuckerberg [("Attorney Zuckerberg")] from the Law Office of Mark S. Zuckerberg, P.C. filed the Bankruptcy Case for Defendants.

5. The Defendants reside at 12929 Bartlett Drive, Fishers, IN 46037.

6. Defendants filed their Bankruptcy Petition, Schedules, Statement of Financial Affairs, and other required documents ("Bankruptcy Petition") on January 13, 2021.

7. Defendants signed the Bankruptcy Petition under the penalties for perjury attesting that the information contained therein was true and correct.

8. Chapter 7 Trustee Deborah J. Caruso ("Trustee Caruso") was appointed as the Chapter 7 trustee to administer the Bankruptcy Case.

9. On February 9, 2021, Trustee Caruso held the 11 U.S.C. § 341 meeting of creditors ("341 Meeting").

10. Prior to the 341 Meeting, [Defendants] turned over bank statements for the ninety (90) days preceding the Petition Date ("Bank Statements") to Trustee Caruso pursuant to the Chapter 7 Uniform Document Production List ("Form"). A copy of the Form is located on the website of the United States Bankruptcy Court for the Southern District of Indiana at the following web address: https://www.insb.uscourts.gov/sites/insb/files/UPL7.pdf.

11. Attorney Carrie Breedlove [("Attorney Breedlove")] from the Law Office of Carrie L. Frantz LLC appeared on behalf of Defendants at the 341 Meeting.

12. Defendants attended the 341 Meeting on February 9, 2021, via telephone, wherein Trustee Caruso questioned Defendants under oath, subject to the penalties for perjury.

13. Defendants testified that they had reviewed the Bankruptcy Petition prior to filing it.

14. Defendants further testified that they had signed the Bankruptcy Petition and it was true and complete.

15. On March 1, 2021, Trustee Caruso filed a Report of Possible Assets. (Bankruptcy Case Docket No. 15).

16. Trustee Caruso questioned the Defendants during the 341 Meeting about a $10,000 deposit ("Deposit") and a $13,000 withdrawal ("Withdrawal") that occurred into and from one of Defendants' bank accounts at BMO Harris Bank (Acct. No. xxxxxx7728) 13 days prior to filing. Defendants testified that the source of funds for the Deposit was a bonus that Mr. Shanklin received from his employer on December 31, 2020.

17. Defendants testified that $3,000 was used to pay bills, mortgage and car notes and $10,000 was used to purchase a cashier check ("Cashier's Check") which was still in Defendants' possession at the time of [the] 341 Meeting.

18. Defendants testified at the 341 Meeting that they sold real estate located at 12232 Aldenham Blvd, Fishers, Indiana 46037 ("Real Estate") on June 29, 2020, which sale was also disclosed on Question 18 of Defendants' Statement of Financial Affairs ("SOFA").

19. Defendants testified at the 341 Meeting and disclosed on Question 18 of their SOFA that they netted approximately $50,000 from sale of the Real Estate after payment to lenders with first and second mortgages and other closing costs.

20. Defendants testified at the 341 Meeting that they paid $13,971 to the [IRS], which payment is evidenced by Check No. 6218 as indicated on the Bank Statements.

21. Defendants testified at the 341 Meeting that they paid $4,237 to the Indiana

Department of Revenue, which payment is evidenced by Check No. 6217 as indicated on the Bank Statements.

22. Trustee Caruso directed the Defendants to turn over the funds to their lawyer who would then turn over the funds to her.

23. Defendants turned the Cashier's Check over to Trustee Caruso on March 5, 2021.

24. Defendants did not disclose the Cashier's Check on their Bankruptcy Petition.

25. The Withdrawal was visible on the Bank Statements produced by Defendants to Trustee Caruso prior to the 341 Meeting.

26. Defendants testified at the 341 Meeting that they were going to use the money potentially for the IRS and that they still needed to buy a washer and dryer.

27. Defendants testified at the 341 Meeting they had not yet filed their 2020 tax returns and that they anticipate they will be paying taxes for tax year 2020.

28. Plaintiff conducted an examination pursuant to Fed. R. Bankr. P. 2004 ("Examination") of Defendants on April 27, 2021.

29. Defendants testified at the Examination that they failed to disclose the Cashier's Check because they did not think about it.

30. Defendants further testified that the Cashier's Check was held in a drawer at their home and that the Cashier's Check was intended to pay future tax obligations.

31. On September 23, 2021, [IRS] timely filed [the Claim] in the Bankruptcy Case in the amount of $12,766.70 representing a liability owed by Defendants for the tax period ending December 31, 2020, a period prior to the Petition Date.

32. As of the date of the filing of the Complaint, Defendants have not amended their Bankruptcy Petition.

33. Defendants obtained the Cashier's Check on December 31, 2020.

34. Defendants had possession of the Cashier's Check on the Petition Date.

35. The existence of the Cashier's Check, which is property of the bankruptcy estate, was not disclosed on the Bankruptcy Petition.

36. The Withdrawal relating to the purchase of the Cashier's Check was visible on the Bank Statements provided to Trustee Caruso prior to the 341 Meeting.

The Court makes the following additional findings of fact:

37. Prior to the Petition Date, when Mr. Shanklin would receive a bonus, Defendants set aside funds, rather than spend the bonus immediately, in order to pay bills.

38. Defendants filed the Bankruptcy Case mainly because they had to close the auto repair shop they owned due to the COVID-19 pandemic.

39. Defendants met with Attorney Zuckerberg and/or his staff in July 2020 and in October 2020 in preparation for filing the Bankruptcy Case, and a third time in January 2021 to sign the documents necessary to commence the Bankruptcy Case.

   a. At the October 2020 meeting, Attorney Zuckerberg gave Defendants paperwork to complete. Defendants completed the paperwork and returned it to Attorney Zuckerberg's office on or about December 15, 2020.

   b. At the January 2021 meeting, Defendants reviewed and signed the Bankruptcy Petition prepared by Attorney Zuckerberg from the paperwork completed and submitted by Defendants.

   c. The Cashier's Check at issue in this adversary proceeding was obtained between the time Defendants submitted their paperwork to Attorney Zuckerberg and the time they reviewed and signed the Bankruptcy Petition. Accordingly, the paperwork submitted to

Attorney Zuckerberg in December 2020 without any reference to the Cashier's Check was accurate at the time it was submitted. The Bankruptcy Petition accurately reflected the information contained in the paperwork submitted by Defendants to Attorney Zuckerberg in December 2020.

40. Mrs. Shanklin purchased the Cashier's Check. The Cashier's Check is payable to Mrs. Shanklin.

41. Defendants delivered the Bank Statements to Attorney Zuckerberg knowing they would be turned over to Trustee Caruso. Defendants did not destroy or mutilate the Bank Statements such that the Deposit and/or the Withdrawal were removed or concealed. Attorney Zuckerberg did not question Defendants about the Deposit and/or the Withdrawal prior to or after turning the Bank Statements over to Trustee Caruso. Attorney Breedlove did not question Defendants about the Deposit and/or the Withdrawal prior to attending the 341 Meeting with them.

42. When Trustee Caruso asked Defendants at the 341 Meeting about the Withdrawal, they disclosed that $3,000 was used to pay various bills (some of which represented debts that likely could have been discharged through the Bankruptcy Case). They paid such bills because they historically paid their bills. Defendants further disclosed the existence, location and intended use of the Cashier's Check representing the balance of the Withdrawal. When Plaintiff asked Defendants at the Examination about the Withdrawal, they disclosed the location in which they held the Cashier's Check prior to turning it over to their counsel for turnover to Trustee Caruso and the intended use of the Cashier's Check.

43. Defendants intended to use the Cashier's Check to pay anticipated taxes owed to IRS for tax year 2020 and to purchase a washer and dryer. Defendants' pre-petition practice had

been to pay tax obligations at the time they filed their returns. They did not understand prior to the Petition Date that they could have paid taxes due to the taxing authorities prior to the filing of their return(s).

44. Of the $12,766.70 Claim filed by IRS for tax year 2020, IRS asserts that $12,414.33 is entitled to priority under 11 U.S.C. § 507(a)(8). Trustee Caruso has not objected to the Claim.

45. The bankruptcy process was very stressful for Defendants. The Bankruptcy Case is the only bankruptcy case ever filed by Defendants. They were very nervous about testifying at the 341 Meeting. They complied with Attorney Breedlove's direction that they tell the truth at the 341 Meeting.

46. Defendants turned over the Cashier's Check to Attorney Zuckerberg on February 10, 2021, the day following the 341 Meeting.

47. Defendants' testimony at the trial was credible.

## Conclusions of Law

The Court makes the following conclusions of law:

A. Any finding of fact above will also be a conclusion of law, and any conclusion of law will also be a finding of fact, to support the judgment of the Court.

B. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334 and 157.

C. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

D. Venue is proper in this matter pursuant to 28 U.S.C. §§ 1408 and 1409.

E. Plaintiff seeks a denial of Defendants' discharge in the underlying Bankruptcy Case pursuant to 11 U.S.C. §§ 727(a)(2)(A) and (a)(4)(A).

F. Section 727(a) provides, in relevant part:

The court shall grant the debtor a discharge, unless –
…
(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
(A) property of the debtor, within one year before the date of the filing of the petition …
…
(4) the debtor knowingly and fraudulently, in or in connection with the case –
(A) made a false oath or account … .

G. "Consistent with the 'fresh start' policy underlying the Code, these [§ 727(a)] exceptions to discharge should be construed strictly against the creditor [or Plaintiff] and liberally in favor of the debtor. It is also important, however, to recognize that a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor." *Matter of Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996) (internal citations omitted). "The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor." *Soft Sheen Prods., Inc. v. Johnson (In re Johnson),* 98 B.R. 359, 367 (Bankr. N.D. Ill. 1988) (citation omitted).

H. The grounds for denial of discharge under § 727(a) must be established by a preponderance of the evidence. *Peterson v. Scott (In re Scott),* 172 F.3d 959, 966–67 (7th Cir. 1999).

I. "[I]t remains within the discretion of a bankruptcy court to grant a discharge even when grounds for denial of discharge are demonstrated to exist." *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 901 (7th Cir. 2002) (quoting *In re Hacker*, 90 B.R. 994, 997 (W.D. Mo. 1987)).

*§ 727(a)(2)(A)*

J. Plaintiff alleges that Defendants are not entitled to a discharge because they

concealed the Cashier's Check with intent to hinder, delay or defraud their creditors and/or Trustee Caruso.

K.  "Concealment … includes preventing discovery, fraudulently transferring or withholding knowledge or information required by law to be made known." *Scott*, 172 F.3d at 967 (quoting *United States v. Turner*, 725 F.2d 1154, 1157 (8th Cir. 1984)).  A "concealment or transfer under § 727(a)(2) may occur even if no creditors are harmed by it.  'Proof of harm is not a required element of a cause of action under Section 727.' " *Id.* at 968 (quotation omitted).

L.  Trustee has failed to prove by a preponderance of the evidence that Defendants concealed property of the estate with the requisite intent.  Mrs. Shanklin obtained the Cashier's Check in order to "earmark" funds to pay taxes Defendants believed would be (and in fact were) due and owing to IRS for tax year 2020.  This practice was consistent with Defendants' pre-petition practice of holding bonus monies to pay anticipated bills.  Defendants intended to use the Cashier's Check to pay Defendants' anticipated, legitimate pre-petition tax debt, the vast majority of which is a priority unsecured claim, not to conceal such funds so they could not be used to pay legitimate pre-petition debts.[2]  When asked directly about the Cashier's Check, Defendants answered truthfully.  When told they were required to turnover the Cashier's Check for administration by Trustee Caruso, Defendants promptly complied.  Had Defendants been asked directly by Attorney Zuckerberg and/or Attorney Breedlove about the Deposit, the Withdrawal or the Cashiers' Check, the Court concludes that they would have been just as honest with their counsel as they were with Trustee Caruso and the Court.

---

[2]  The reference at the 341 Meeting to purchasing a washer and dryer with the Cashier's Check is noted. Based on the evidence and the totality of the circumstances, the Court concludes that the washer and dryer would have been purchased if any funds were left after the Cashier's Check paid Defendants' tax debt for tax year 2020. The amount of IRS' Claim exceeded the value of the Cashier's Check, so the Court considers Defendants' reference to the intended purchase of a washer and dryer with the Cashier's Check a moot point.

M.     Based upon Defendants' testimony and the Court's assessment of Defendants' credibility, the Court concludes that Defendants did not intend to conceal the Cashier's Check with intent to hinder, delay or defraud their creditors and/or Trustee Caruso.  Therefore, Plaintiff has not sustained her burden to prove the required elements of § 727(a)(2)(A).

*§ 727(a)(4)(A)*

N.     "The purpose of § 727(a)(4) is to enforce the Debtors' duty of disclosure and to ensure that the Debtors provide reliable information to those who have an interest in the administration of the estate." *Stathopoulos v. Bostrom (In re Bostrom)*, 286 B.R. 352, 359 (Bankr. N.D. Ill. 2002) (citations omitted).

O.     In order to prevail, Plaintiff must establish five elements:  "(1) [Defendants] made a statement under oath; (2) the statement was false; (3) [Defendants] knew the statement was false; (4) [Defendants] made the statement with the intent to deceive; and (5) the statement related materially to the bankruptcy case." *Id.* (citation omitted).

> P.     To find the requisite degree of fraudulent intent, the court must find that the debtor knowingly intended to defraud or engaged in such reckless behavior as to justify a finding of fraud.  Direct evidence of intent to defraud may not be available.  Instead, intent may be inferred from circumstantial evidence or by inference based on a course of conduct.  Reckless disregard means "not caring whether some representation is true or false ... ."  If a debtor's bankruptcy schedules reflect a "reckless indifference to the truth" then the plaintiff seeking denial of the discharge need not offer any further evidence of fraud.

*Trennepohl v. Neal (In re Neal),* No. 06-07116, 2009 WL 684793 at *2 (Bankr. S.D. Ind. 2009) (internal citations omitted).

Q.     "[A] fact is material 'if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.' " *Stamat v. Neary*, 635 F.3d 974, 982 (7th Cir. 2011) (citation omitted).

R.  There is no doubt that Plaintiff proved that Defendants had possession of the Cashier's Check on the Petition Date and that Defendants did not disclose material facts regarding the existence of the Cashier's Check on their Bankruptcy Petition. However, based solely on the omission of the Cashier's Check from the Bankruptcy Petition,[3] Plaintiff has not proved that Defendants' failure to disclose was done "knowingly and fraudulently". Rather, Plaintiff has proven that Defendants made a mistake. Defendants were mistaken in their belief that they could not pay their tax obligations until their returns were filed, so they obtained the Cashier's Check to pay their taxes. They were mistaken in understanding that a bankruptcy discharge could relieve them of the obligation to pay certain of their routine bills and paid their bills anyway with a portion of the Withdrawal. These errors tilted the scales in their creditors' favor and evidenced Defendants' diligent attempts to pay their debts.

S.  It is also true that Defendants were mistaken not to update their financial information with Attorney Zuckerberg to account for changes (*i.e.*, the Deposit, the Withdrawal and the Cashier's Check) that occurred between submitting their information in December 2020 and signing their Bankruptcy Petition in January 2021. There is nothing in the record regarding Defendants' understanding of their obligation to update the information they submitted to Attorney Zuckerberg for inclusion in the Bankruptcy Petition with financial transactions (*e.g.*, bonuses received and how such monies were handled) that occurred after the information was submitted but prior to their Bankruptcy Petition being filed. There is nothing in the record to suggest Defendants were recklessly indifferent to the truth given that they honestly answered all questions asked of them about the Deposit, the Withdrawal and the Cashier's Check. In the absence of such evidence, because the Court construes exceptions to discharge strictly against

---

[3] Trustee has not offered evidence of any other false statement in support of her allegations under § 727(a)(4)(A).

Plaintiff and liberally in favor of Defendants, and because the Court concludes that Defendants are honest but unfortunate debtors, *not* "truly pernicious" debtors, the Court concludes that Defendants did not knowingly and fraudulently file a false Bankruptcy Petition. Therefore, Plaintiff has not sustained her burden to prove the required elements of § 727(a)(4)(A).

## **Decision**

For the reasons described above, the Court concludes that Defendants did not act with the requisite intent necessary for a denial of their discharge pursuant to §§ 727(a)(2)(A) and (a)(4)(A). Defendants should be granted a discharge in the Bankruptcy Case.

The Court will enter judgment in favor of Defendants and against Plaintiff consistent with these findings of fact and conclusions of law contemporaneously herewith.

# # #